UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY E. WHELEN                                    CIVIL ACTION

VERSUS                                             NO. 08-3620

CHIEF PENOUILH ET AL.                              SECTION "J" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Larry E. Whelen, is a prisoner currently incarcerated in the Hunt
Correctional Center ("Hunt") in St. Gabriel, Louisiana.  He filed this complaint pro se
and in forma pauperis pursuant to 42 U.S.C. § 1983 against Sue Ellen Penouilh, warden
of the Jefferson Parish Correctional Center;  Major Howard Lavin, assistant warden;  Lt.
Frank Ingle; Jean M. Llovet, medical director of the Jefferson Parish Correctional Center;
Jefferson Parish Sheriff Newell Normand, and Doctors Green and Richard. Whelen
alleges that while incarcerated in the Jefferson Parish jail for about two months during
April - June  2008, he was provided with inadequate medical care; was threatened and
harassed in retaliation for exercising his rights; and was subjected to unconstitutional
conditions of confinement, including poor security, unsanitary living conditions and cold
food.  He seeks injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On September 16, 2008, I conducted a telephone conference in this matter.
Participating were plaintiff pro se and Kyle Kirsch and Danny Martiny, counsel for

defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. Record Doc. Nos. 36 and 45.

## THE RECORD

Plaintiff testified that he is currently incarcerated in Hunt based upon his theft conviction on June 6, 2008, for which he is serving a sentence of two years in prison.  He stated that the claims he asserts in this case all arise from his incarceration in the Jefferson Parish Correctional Center for a period of a little more than two months from April 4, 2008, when he was arrested on the theft charge, until June 17, 2008, when he was transferred from the Jefferson Parish jail following his conviction.

As to his first claim, that he was denied adequate medical care during his incarceration in the Jefferson Parish jail, Whelen testified that he is a diabetic and that he did not receive "any insulin for about two weeks" after his arrest.  "They would bring me down [to the jail medical area] and check my blood sugar and if it wasn't a certain number they would say I didn't need it," he said.  He explained that his blood sugar level was checked twice a day at the jail, using a finger prick blood monitor, and "unless it was 250 or over they wouldn't give me any insulin."  Whelen testified that before his arrest he was taking prescription insulin for his diabetes, consisting of "35 units of Lantus" and "Humalog."  Whelen confirmed that after about two weeks he did begin to receive insulin at the jail.

Whelen stated that he had not yet received a copy of his medical records from the Jefferson Parish Correctional Center, which had earlier been provided to the court pursuant to my order.  Record Doc. Nos. 6 and 38.  He confirmed a reference in the medical records indicating that he first received insulin at the jail on or about April 16, 2008.  He complained, however, that he did not receive insulin daily thereafter. "[O]nce they started it some of the nurses still had it wrong.  They were still going under the if I was 250 over, you know, they would give me the Humalog.  They weren't giving me the Lantus until maybe a week after that.  I had to have one of the other nurses check the chart."  He testified that once he got another nurse to check his chart, the error was corrected, and he began to get Lantus every day, beginning probably around April 18 or 20.  He confirmed that it took about three weeks for him to begin to receive the appropriate doses of insulin while he was in the Jefferson Parish jail.

Asked what problems this delay in receiving the appropriate insulin dosage caused, he said, "my vision is blurry."  He asserted that he is now "legally blind," and he was not "legally blind" before his arrest.  He said that when he complained about his blurry vision, he was told that he would be sent to the eye doctor.

Whelen also complained that "I walk with a cane and they refuse[d] to give me that."  He said the refusal of guards in the jail to permit him to use his cane caused him to have "to stumble along with the crew [of other inmates] in the morning and every

3

evening" when he was brought to the medical unit for care.  He said he understood the potential security problem posed by permitting an inmate in a jail to have a cane, but he alleged that another inmate was permitted to have one.

Whelen testified that during his stay in the Jefferson Parish jail he was transported by deputies to the "GI Clinic at the LSU Clinic" in New Orleans twice for treatment of his colitis condition.

As to his vision problem, he testified that a nurse at the jail told him he would be sent "to the Vision Center to check for glasses, you know, to check my eyes" only if he first had $90 in his inmate account to pay for it. He alleged that a pretrial detainee should not have to pay, or should only "pay minimal," for such care. He also said that defendant Llovet had erroneously debited his prisoner account by $70 for medical care, and had never returned it to him.

Asked if he had filed grievances in the Administrative Remedies Procedure ("ARP") available at the Jefferson Parish jail, he testified that he had done so as to his medical care claim and all other claims asserted in this case.  He testified that in each instance defendant Llovet summoned him to her office and "talked to me individually" and told him "'this is what we're doing and this is what we're not going to do,' . . . [s]o she really didn't remedy anything."

As to his claim that the food in the jail was inadequate, Whelen testified that diabetic inmates "used to get cold food every day because it's in a Styrofoam tray." He also complained that the "grits used to come all in one piece and . . . as a diabetic it's hard for you to maintain a proper diet there anyway."

As to his complaint that security was inadequate because there were not enough guards, he complained that he was "in the south wing which is the new section of jail" and "there was things that went on in there," so he asked to be moved and was moved in about a week. Asked if anything happened to him as a result of the inadequate security, he said, "no. sir."

Concerning his claim that conditions in the jail were unsanitary, he complained that there were only two toilets available for use by 24 inmates. He alleged that the number of toilets was a particular problem for him since "I go to the toilet about eight to ten times every day." He also complained that there were no water fountains and only one sink for 24 inmates.

As to the claim contained in his complaint that Assistant Warden Lavin "[t]hreatened to lock me up for exercising my rights," Record Doc. No. 1 (Complaint at ¶ IV), Whelen testified that when he complained that only one guard was assigned to cover 96 inmates, Lavin responded that "'[i]f you feel threatened, we will certainly move you in a hall cell by yourself,' . . . that's like solitary confinement with nothing, . . . . I

5

felt intimidated . . . that he may have had them lock me up and just use the fact that I wrote that I felt threatened." He also complained that the assistant warden had failed to contact FBI agents when Whelen wrote that he wanted to contact the FBI about Jefferson Parish courthouse corruption.

On cross-examination, Whelen testified that he filed "six or eight" ARP grievances when he was in the Jefferson Parish jail. He confirmed his earlier testimony that after he complained to a different nurse about the failure initially to provide him with insulin, he received it thereafter. He complained, however, that by the time he began receiving insulin his eyesight had already been damaged. He also complained that his two trips to the GI Clinic were "wasted trips" because he was brought to the clinic too close to closing time and had to be rescheduled both times. He clarified that his complaint concerning the failure to provide him with insulin was the opinion of medical staff that they could not simply give him insulin "because I said that this is what I take."

After the hearing, defense counsel provided the court and plaintiff with copies of the ARP grievances and responses concerning his complaints for the relevant time period while in the Jefferson Parish jail. Record Doc. No. 40. These submissions included eight grievances, including one date-received on April 15, 2008, concerning unsanitary conditions; three date-received on April 14 and 25 and May 1, 2008, concerning medical care; one date-received on April 29, 2008, concerning cold food; one date-received on

May 7, 2008, concerning lack of security; one date-received on May 15, 2008, concerning a mattress; and one date-received on May 28, 2008, concerning $70 charged to his inmate account for medical service.

Whelen's medical records from the jail, Record Doc. No. 38, confirm the essential substance of his testimony, including the almost daily monitoring of his blood sugar levels in connection with his diabetes; the initial failure to provide him with insulin, followed by the provision of insulin medications for his condition within two to three weeks of his arrest; his complaints concerning his eyesight; and his frequent treatment for his various gastrointestinal conditions.

Two motions to dismiss, both filed by defendants Jean M. Llovet and Dr. Green, are pending. The first is the motion of defendants to dismiss plaintiff's claims against them for failure to exhaust ARP and for failure to comply with Louisiana's Medical Malpractice Act.  Record Doc. No. 26.  Plaintiff filed a written response in opposition to this motion.  Record Doc. No. 33.  The second is defendants' motion to dismiss for failure to state a claim of denial of medical care cognizable under Section 1983.  Record Doc. No. 46.  Because this motion was supported by attached exhibits beyond the pleadings, I converted it to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and provided plaintiff with an opportunity to present responsive evidentiary materials.  Record Doc. No. 48.  Although plaintiff failed to file any separate written

7

response to this motion by November 11, 2008, as required by my previous order, Record Doc. No. 48, all of his prior written submissions and his testimony provided at the <u>Spears</u> hearing have been considered, both in opposition to this motion and as part of the screening process required by 28 U.S.C. § 1915A, as discussed below.

For the following reasons, IT IS RECOMMENDED that defendants' motion to dismiss for failure to exhaust ARP, Record Doc. No. 26, be DENIED, and that their motion to dismiss plaintiff's medical care claim against them, which was converted to a motion for summary judgment, Record Doc. Nos. 46 and 48, be DISMISSED AS MOOT.  For the reasons discussed below, plaintiff's complaint as a whole may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims, and it is therefore unnecessary to consider defendants' motion to dismiss/for summary judgment.  Plaintiff's complaint, as amended and expanded upon by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

## ANALYSIS

### I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006)

(quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

II.     <u>MEDICAL CARE</u>

It appears that Whelen was a pretrial detainee for most of the time and a convicted prisoner for some of the time about which he complains about his medical care.  Before

the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it

appeared that prison officials must provide pretrial detainees with reasonable medical

care unless the failure to provide it was reasonably related to a legitimate government

interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Mayweather v. Foti</u>, 958 F.2d 91

(5th Cir. 1992); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was

"whether the denial of medical care . . . was objectively reasonable in light of the

Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th

Cir. 1990), <u>abrogated on other grounds as recognized in</u> <u>Martin v. Thomas</u>, 973 F.2d 449,

455 (5th Cir. 1992).

> In <u>Hare</u>, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.  The Fifth Circuit explained that for the <u>Bell</u> "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

12

omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the

minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997)) (additional citations omitted)

(emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, Whelen fails completely to allege facts sufficient to establish deliberate indifference.

Even assuming that plaintiff's medical condition resulting from diabetes and/or colitis was a serious condition for constitutional purposes, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials.  Plaintiff's complaint as amended by his testimony shows that he received constitutionally adequate medical care for diabetes while incarcerated at the Jefferson Parish jail when he was provided with regular examinations and medication, including insulin, for his condition.  See <u>Greer v. Tran</u>, 2005 WL 428856 (5th Cir. Feb. 24, 2005) (no deliberate indifference to serious medical needs where plaintiff was tested for and diabetes mellitus ruled out in prisoner who ultimately died after falling into a diabetic Keto acidotic coma); <u>Harris v. Donaldson</u>, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995); (no deliberate indifference where prisoner received medical treatment for

diabetes, including blood sugar level monitoring, insulin doses and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes); Hall v. Thomas, 1998 WL 404386 (S.D. Tx. Jan. 16, 1998), aff'd, 190 F.3d 693, 697 n. 2 (5th Cir. 1999) (district court's dismissal of prisoner's Section 1983 claim concerning medical treatment for diabetes abandoned on appeal, otherwise affirmed).

Although Whelen has alleged delay in receiving medical care and has expressed dissatisfaction with the extent or effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay,

plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. Plaintiff's vague allegations concerning decreased vision do not rise to the level of "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case.

As in Serton v. Sollie, 2003 WL 22849840, at *3 (5th Cir. Dec. 2, 2003), Whelen's contention that prison guards refused to permit him to use his walking cane when he went to the medical unit "implicates the adequacy of the medical care provided in the jail." Whelen testified, however, that he was aware of the potential security risk of permitting inmates in a jail to carry a walking cane, and – as in Serton – his allegations concerning the cane did not rise to the constitutional level of establishing deliberate indifference to a substantial risk of serious medical harm resulting in injuries. Id. at *3-*4.

Contentions like Whelen's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>see also</u> <u>Marksberry v. O'Dea</u>, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged that treatment received for his broken hand was inadequate failed to state constitutional violation, when he was examined by physician and received x-rays and medication); <u>Bryan v. Endell</u>, 141 F.3d 1290, 1291 (8th Cir. 1998) (although delay in treating plaintiff's broken hand made surgery impractical and may have been negligent, it did not establish constitutional violation); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (Rainey, J.) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not allege that he

suffered any substantial harm from the delay, failed to state a claim for deliberate indifference).

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.     CONDITIONS OF CONFINEMENT: SANITATION, FOOD, SECURITY

Whelen testified that he was subjected to unconstitutional conditions of confinement.  He complained of cold food, poor security and unsanitary living conditions, including an inadequate number of toilets and sinks and no water fountain.

Whelen was a pretrial detainee during most of the time period about which he complains and a convicted inmate during the remainder of the time.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.  In Hare, as previously discussed, the Fifth Circuit held that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs and that a jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to the inmate but responded with deliberate indifference to that risk.  Id.

There is nothing in plaintiff's written submissions or Spears testimony from which it might be inferred that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997)), and the deliberate indifference standard described in detail above applies.

As to these particular claims, Whelen's allegations do not allege violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 847.  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary

conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. As previously discussed, this means that a prison official cannot be held liable unless he official knows of and disregards an excessive risk to inmate health or safety. Id. at 837.

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions in the jail relate to prison officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed." Hamilton, 74 F.3d at 104 n.3. Thus, Whelen must allege facts sufficient to establish that any defendant knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Plaintiff fails to allege any such facts. Although the conditions he described may be unpleasant, Whelen has failed to allege either deprivations so extreme that they violate the United States Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of a constitutional violation. The conditions that Whelen experienced did not result in "sufficiently serious" conditions posing "a substantial risk of serious harm." Farmer, 511 U.S. at 834.

21

A.    Sanitation

Whelen complained that there were only two toilets and one sink available for use by 24 inmates and no water fountains.  A short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Correspondence. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)).

In two cases, the Fifth Circuit has held that virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'"  Davis, 157 F.3d at 1004, 1006.  The appeals court quoted the

Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'"  Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson, 501 U.S. at 304).

Similarly, in the instant case, the conditions Whelen experienced occurred during a short period of time and were not extreme deprivations falling below any minimal civilized measure of life's necessities.  Thus, this claim advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

B.    Food

Whelen claims that the food served at the jail was cold, that the "grits used to come all in one piece" and that it was difficult to maintain a proper diet as a diabetic.  The Eighth and Fourteenth Amendments set limits on the kind of treatment and conditions a State may impose on prisoners.  States violate the Eighth Amendment if they fail to provide prisoners with reasonably adequate food, clothing, shelter and sanitation.  Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977), rev'd in part on other grounds sub nom Alabama v. Pugh, 438 U.S. 781, 915 (1978); George v. King, 837 F.2d 705, 707 (5th Cir. 1988); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974).

In this case, plaintiff's allegations, while describing less than ideal conditions, do not state a violation of plaintiff's constitutional rights.  Whelen reports no serious illness or injury from having eaten this food.  Constitutional standards require only that prison authorities provide an inmate with "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'"  Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)).  Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food.  The Constitution does not require that convicted inmates be provided with particular foods or foods at a certain temperature or every culinary amenity which one may find desirable.  Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)).

The Constitution also does not require that plaintiff receive particular amounts or kinds of food.  Green, 801 F.2d at 770.  "'Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation.'  Even on a regular, permanent basis, two meals a day may be adequate."  Berry, 192 F.3d at 507 (quoting Green, 801 F.2d at 770-71).  Further, "inmates cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).

Plaintiff was never denied food.  Whelen's complaints about the food at the jail are legally frivolous and must be dismissed.

C.     Security

Whelen also claims that security at the jail was inadequate because there were not enough guards.  Whelen conceded, however, that he requested and was moved to another part of the jail in about a week, and that nothing happened to him as a result of any perceived or alleged lack of security.  Prison officials have a duty to protect inmates from harm, but as with some of Whelen's other claims in this case, an inmate may state a claim under Section 1983 in this regard only if he establishes deliberate indifference to a substantial risk of harm.  Hare, 74 F.3d at 650.  Whelen's own testimony establishes that he suffered no harm and was exposed to little risk by the security measures in the old jail.

None of Whelen's allegations about the conditions at the jail establish constitutional violations.  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

IV.     MERE THREATS/RETALIATION

Plaintiff's allegations that he was threatened by defendant Lavin when he complained about the lack of security are not cognizable under Section 1983.  Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995).  The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'"  Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ."  Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983."  Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994).  In this case, plaintiff's allegation that he was threatened with being placed in solitary confinement do not rise to the level of a

26

constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

Whelen also asserts that the threats were retaliation for having complained about conditions at the jail.  The law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> It is well established that prisoners enjoy a constitutional right of access to the courts.  It is equally well established that prison officials may not retaliate against a prisoner for exercising this right.  The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing  Bounds v. Smith, 430 U.S. 817 (1977); Woods v. Smith, 60 F.3d 1161, 1164-66 (5th Cir. 1995);  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quotations and additional citations omitted).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment, which had sought dismissal of a prisoner's retaliation claim.  The Fifth Circuit

agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that trial courts must "carefully scrutinize these claims."  Id.

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .  The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996). The Supreme Court made clear in Lewis that an inmate must establish actual injury to state a claim for denial of his right of access to the courts.  The Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  Id. at 356 (emphasis added).

A year after <u>Lewis</u>, the Fifth Circuit reviewed another retaliation claim by inmates in <u>Johnson</u>.  In that case, a magistrate judge had concluded that certain aspects of the Texas parole system, which permitted parole board members to consider prisoners' participation in inmate litigation in connection with their parole determinations, violated the inmates' First Amendment right of access to the courts.  The appeals court reversed and remanded this portion of the trial court's findings.  <u>Johnson</u>, 110 F.3d at 310-14.

The Fifth Circuit again noted the long recognized rule that prisoners generally enjoy a constitutional right of access to the courts.  <u>Id.</u> at 310.  Quoting the Supreme Court's decision in <u>Lewis</u>, however, the Fifth Circuit held that "[t]his right of access for prisoners is not unlimited . . . ; rather it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  <u>Id.</u>  Significantly for present purposes, the Fifth Circuit concluded: "Thus, <u>neither any frivolous filings</u> nor secondary litigation activity, i.e., legal research and writing . . . , <u>may comprise the basis of a retaliation claim</u>."  <u>Id.</u> (emphasis added).

Whelen's vague retaliation claim in this case alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts.  Whelen has been afforded full access to this court.  Actionable retaliation cannot occur in response to a frivolous claim.  Thus, plaintiff wholly fails to establish any fact as to the actual injury/legal prejudice element of his First Amendment retaliation claim.  Accordingly, his retaliation

claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.  It must be dismissed pursuant to 28 U.S.C. § 1915(e).

V.   EXHAUSTION OF ARP

In the Prison Litigation Reform Act of 1996 ("PLRA"), Congress revised the exhaustion provision to require that a prisoner complete an available prison ARP before filing a Section 1983 suit and to eliminate the district court's discretion to permit a suit to proceed without exhaustion.  Porter v. Nussle, 534 U.S. 516, 532 (2002) (citing the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. § 1997(e)).  In short, 42 U.S.C. § 1997(e)(a) now mandates exhaustion of administrative remedies, stating that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a) (emphasis added).

In Clifford v. Gibbs, 298 F.3d 328, 329 (5th Cir. 2002), the Fifth Circuit reiterated the Supreme Court's finding that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Id. (citing Porter, 534 U.S. at 992) (emphasis added).

30

In this case, Whelen has testified that he exhausted the available ARP at the jail. The materials submitted by defendant indicate that Whelen filed an ARP grievance as to all of his claims.  The allegations to the contrary contained in defendants' motion to dismiss on this ground are not sufficient to establish that the alleged failure to exhaust an available prison ARP is undisputed.  Accordingly, defendants' motion to dismiss on this ground must be denied.  However, plaintiff's complaint must be dismissed with prejudice for the other reasons stated in the preceding sections.

VI.   MOTION TO DISMISS/FOR SUMMARY JUDGMENT

For the foregoing reasons, I have recommended that plaintiff's Section 1983 complaint should be dismissed at the conclusion of the screening process mandated by 28 U.S.C. § 1915A.  Accordingly, it is unnecessary to address defendants' motion to dismiss, which I converted to a motion for summary judgment, and I hereby recommend that defendants' motion, Record Doc. No. 46, be dismissed as moot.

**RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that (1) defendants' motion to dismiss for failure to exhaust ARP, Record Doc. No. 26, be DENIED; (2) that their motion to dismiss/for summary judgment concerning plaintiff's medical care claim against them, Record Doc. No. 46, be DISMISSED AS MOOT; and (3) that plaintiff's

complaint as a whole be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ____19th____ day of December, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE